UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SPROLE,

                         Plaintiff,

        -against-                                  3:18-CV-1185 (LEK/ML)

UNDERWOOD, *et al.*,

                         Defendants.

_____

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

This action concerns alleged violations of pro se plaintiff Linda S. Sprole's Fourteenth

Amendment rights and New York State law. Dkt. No. 1 ("Complaint").

Plaintiff asserts claims under 42 U.S.C. § 1983 against the State of New York,[1] Robert R.

Sprole, III, Plaintiff's ex-husband, and several attorneys: Donald J. Martin, Christopher D. Jagel,

Richard B. Alderman, Susan C. Kirby, and Harlan B. Gingold. Id. at 45.[2] Plaintiff also sues R.

Sprole, Martin, Jagel, Alderman, Kirby, and Gingold for fraud and "[g]rand [l]arceny" under

New York State law. Id. And she sues Alderman, Kirby, and Gingold for breach of fiduciary duty

---

[1]  While Plaintiff has listed Barbara Underwood, the former acting attorney general of
New York State, as a defendant, id. at 2, the court construes Plaintiff's claim to be against the
State of New York, and not Underwood, given none of Plaintiff's causes of action specifically
list her and the complaint does not allege any act or omission by her. Rather, Plaintiff's claims,
allegations, and prayer for relief list the "State of New York." See generally Compl. "Dismissal
is appropriate where a defendant is listed in the caption, but the body of the complaint fails to
indicate what the defendant did to the plaintiff." Cipriani v. Buffardi, No. 06-CV-889, 2007 WL
607341, at *1 (N.D.N.Y. Feb. 20, 2007) (Kahn, J.). Thus, Underwood is dismissed from this
action. The Clerk of the Court is hereby directed to substitute the State of New York for
Underwood as a defendant in this matter and amend the case caption accordingly.

[2]  Citations to all filings refer to the pagination generated by CM/ECF, the Court's
electronic filing system.

under New York State law. Id. Plaintiff requests "injunctive and declaratory" relief from the State of New York and $80,403.69 in damages from each of R. Sprole, Martin, Jagel, Alderman, Kirby, and Gingold. Id. at 46. Gingold has counterclaimed against Plaintiff for sanctions and attorney's fees. Dkt. No. 19 ("Answer and Counterclaim").

Plaintiff's claims stem from a state interpleader action that distributed alimony payments Plaintiff received from her ex-husband, R. Sprole, to attorneys that represented Plaintiff in her divorce proceedings. R. Sprole commenced an action for divorce from Plaintiff on September 14, 2009. Compl., Ex. 1 at 110. He was represented in that action by attorneys at the Harris Beach law firm, including Martin. See, e.g., id. at 57. At the conclusion of protracted litigation, the Tompkins County Supreme Court granted R. Sprole his divorce on September 22, 2015. Id. at 56–62. The divorce decree obligated R. Sprole to pay Plaintiff $60,000 annually from 2016 through 2020, followed by a one-time payment of $600,000 in 2021. Id. at 57. During the divorce proceedings and subsequent related litigation, Plaintiff was represented by three of the defendants in the instant action: Alderman, Gingold, and Kirby. Id. at 110. Each of these individuals obtained a charging lien against Plaintiff for unpaid legal fees stemming from their representation of Plaintiff in her divorce. Id. at 110–11.

Shortly before R. Sprole's first alimony payment was due, he commenced an interpleader action in state court seeking a judicial determination of the allocation of the first scheduled $60,000 payment given Alderman, Gingold, and Kirby's charging liens. Id. at 111. R. Sprole named Plaintiff, Alderman, Gingold, and Kirby as stakeholders in the interpleader action. Id. In response to R. Sprole's interpleader action, Plaintiff filed several cross-claims in which she levied various allegations of misconduct against several defendants in this action: (1) at R. Sprole

for "grand larceny"; (2) at Martin for "grand larceny"; (3) at Gingold for breach of contract and breach of fiduciary duty as to his representation of Plaintiff in her divorce; (4) at Kirby for breach of contract and breach of fiduciary duty as to her representation of Plaintiff in her divorce; and (5) at Alderman for legal malpractice, "grand larceny," fraud, breach of contract, civil extortion, and breach of fiduciary duty as to his representation of Plaintiff in her divorce. Id. at 113–15. On September 21, 2017, Justice Judith F. O'Shea of the Tompkins County Supreme Court dismissed all of Plaintiff's cross-claims and sanctioned her because "all of the cross-claims brought by Ms. Sprole were not only without merit, but most of the issues raised were previously litigated and affirmed on appeal." Id. at 115–18.[3] Specifically, Justice O'Shea enjoined Plaintiff

> with the exception of appealing this Decision and Order, commencing or continuing any further actions, proceedings, or motions in relation to her divorce unless she is represented by an attorney admitted to practice in the State of New York, or obtains permission of the Administrative Judge of the District in which she seeks to bring the proceeding.

Id. at 118. She further ordered that Martin, who represented R. Sprole in the interpleader action, to distribute the balance of the first $60,000 alimony payment in the amounts and order as follows: $2,394.97 (plus statutory interest from the date of the charging lien) to Gingold, $8,858.42 (plus statutory interest from the date of the charging lien) to Kirby, and the remaining balance to Alderman. R. Sprole, Martin, and Jagel Mot. Dismiss, Ex. A at 21–22.

In a later decision dated, December 19, 2017, Justice O'Shea ordered Martin to distribute the first alimony payment in the amounts discussed in her September 21, 2017 order. Compl., Ex.

---

[3] Plaintiff failed to attach page 9 of Justice O'Shea's September 21, 2017 Decision and Order. A full copy of the Decision and Order may be found in Dkt. No. 16 ("R. Sprole, Martin, and Jagel Motion to Dismiss"), Exhibit A.

1 at 126. She further ordered Martin to distribute $18,203.69 of another alimony payment to Alderman. Id. And she ordered that Alderman shall keep $2,220 his firm had held in escrow in partial satisfaction of his charging lien against Plaintiff. Id.

Plaintiff appealed Justice O'Shea's September 21, 2017 and December 19, 2017 decisions, but withdrew those appeals on March 13, 2018. R. Sprole, Martin, Jagel Mot. Dismiss, Exs. A at 2; B at 2; C at 2.

Plaintiff filed the instant action on October 2, 2018. Compl. Before the Court are three motions to dismiss made pursuant to Federal Rules of Civil Procedure 12(b)(1), (5), and (6): one filed by R. Sprole, Martin, and Jagel, Dkt. Nos. 16 ("R. Sprole, Martin, and Jagel Motion to Dismiss"); 16-1 ("R. Sprole, Martin, and Jagel Memorandum"); 16-2 ("R. Sprole Declaration"); 16-3 ("Jagel Declaration"); 16-4 ("Martin Declaration"); 26 ("R. Sprole, Martin, and Jagel Reply"), one filed by Kirby, Dkt. Nos. 29 ("Kirby Motion to Dismiss"); 29-1 ("Kirby Declaration"); 29-6 ("Kirby Memorandum"); 42 ("Kirby Reply"), and one filed by Alderman, Dkt. No. 31 ("Alderman Motion to Dismiss," "Alderman Memorandum," and "Alderman Declaration"). Underwood and the State of New York have filed a motion to dismiss pursuant to Rules 12(b)(4) and (6). Dkt. Nos. 27 ("State of New York Motion to Dismiss"); 27-1 ("State of New York Memorandum"). Plaintiff opposes the motions. Dkt. Nos. 25 ("Plaintiff's Response to R. Sprole, Martin, and Jagel"); 41 ("Plaintiff's Response to Kirby, Alderman, and State of New York"). Plaintiff has filed her own motion to dismiss Gingold's counterclaim. Dkt. Nos. 28 ("Counterclaim-Defendant Motion to Dismiss"); 28-1 ("Counterclaim-Defendant Memorandum"); 44 ("Counterclaim-Defendant Reply"). Gingold opposes Plaintiff's motion.

Dkt. Nos. 39 ("Counterclaim-Plaintiff Response"); 45 ("Counterclaim-Plaintiff Supplemental Affidavit").

For the following reasons, the Court grants all of the Defendants' motions to dismiss and grants Plaintiff's motion to dismiss Gingold's counterclaim.

## II.  FACTUAL BACKGROUND

The Court draws all facts, which are assumed to be true, from the Complaint. Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 210 (2d Cir. 2012). "For purposes of a motion to dismiss," the Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." Rothman v. Gregor, 220 F.3d 81, 88–89 (2d Cir. 2000). Courts may refer to matter outside the pleadings when determining if jurisdiction exists pursuant to a Rule 12(b)(1) motion. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

The relevant allegations appear to be as follows:

Plaintiff alleges that R. Sprole violated Plaintiff's Fourteenth Amendment rights when he instituted the interpleader action and committed fraud when he claimed Alderman, Kirby, and Gingold possessed charging liens against Plaintiff.[4] Compl. at 19. She further alleges that R. Sprole transferred a $60,000 alimony payment to Martin on December 30, 2015, which Martin then placed within the escrow account of the Harris Beach law firm. Id. Plaintiff asserts this conduct further violated her Fourteenth Amendment rights and constituted fraud and theft. Id.

---

[4]  Plaintiff also lists another attorney, Michael Sinicki, as another attorney whom R. Sprole falsely claimed possessed a valid charging lien against Plaintiff, id. at 19, but she does not bring any claims against Sinicki in the instant action.

Plaintiff also alleges that, on June 13, 2017, Jagel and other attorneys at Harris Beach filed a motion

> falsely claiming that Richard Alderman, Susan Kirby, and Harlan Gingold possessed valid liens and judgements, claimed that the Harris Beach law firm have the position to pay them with my $60.000.00 property, they requested sanctions against me for asserting a cross action against him, they failed to disclose that Richard Alderman did not obtain a lien when their client's interpleader action was commenced they failed to disclose that only a lawyer in a fiduciary capacity can hold my money, they failed to disclose that they transferred my $5,418.50 tax refund check to Susan Kirby after she withdrew from representing me, they failed to disclose that they transferred my $2,200.00 check to Richard Alderman and that Richard Alderman was still in possession of it.

Id. at 26. Plaintiff alleges this conduct constituted theft, fraud, and a violation of the Fourteenth Amendment. Id.

Additionally, Plaintiff alleges that Alderman, Kirby, Gingold, and Martin violated Plaintiff's constitutional rights when they expressed to the state-court judge handling R. Sprole's interpleader action, Justice O'Shea, why the court should sanction Plaintiff. Id. at 32. She further alleges that on December 20, 2017, Martin and Jagel committed "theft" by paying Alderman, Kirby, and Gingold with Plaintiff's "stolen" money, i.e., the proceeds distributed through R. Sprole's interpleader action. Id. at 40. According to Plaintiff, "The State of New York, Richard Alderman, Susan Kirby, and Harlan Gingold violated the First, Seventh and Fourteenth Amendments by violating my right to proper jurisdiction, my right to a hearing, my right to a trial by jury, my right to petition, my right to equal protection of law, my rights to life, liberty and property without due process of law." Id. at 39.

## III. LEGAL STANDARD

"Pursuant to [Rule] 12(b)(1), a party may, prior to serving a responsive pleading, move to dismiss a complaint on the ground the Court lacks subject matter jurisdiction. When a federal court lacks the statutory or constitutional power to adjudicate a case, it must be dismissed irrespective of its merits." McCluskey v. Town of E. Hampton, No. 13-CV-1248, 2014 WL 3921363, at *2 (E.D.N.Y. Aug. 7, 2014) (citing Makarova, 201 F.3d at 113). Hence, "[w]hen defendants move for dismissal on a number of grounds, the court should 'consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.'" Lipin v. National Union Fire Ins. Co. of Pittsburgh, Pa., 202 F. Supp. 2d 126, 132 (S.D.N.Y. 2002) (quoting Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990)). Plaintiff bears the burden of establishing the Court's subject matter jurisdiction by a preponderance of the evidence. Id.

The Court recognizes that pro se plaintiffs enjoy a more liberal pleading standard. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks omitted) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Although "[t]his is particularly so when the pro se plaintiff alleges that her civil rights have been violated," Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008), pro se plaintiffs must still "comport with the procedural and substantive rules of law," Javino v. Town of Brookhaven, No. 06-CV-1245, 2008 WL 656672, at *3 (E.D.N.Y. Mar. 4, 2008).

## IV. DISCUSSION

### A. Defendants' Motions to Dismiss

Defendants move to dismiss the Complaint for lack of subject matter jurisdiction on several grounds. The Court will analyze each reason in turn.

#### 1. *Rooker-Feldman* Doctrine

Defendants argue that Plaintiff's claims must be dismissed pursuant to the Rooker-Feldman doctrine. R. Sprole, Martin, Jagel Mem. at 8–10; N.Y. State Mem. at 4; Alderman Mem. at 4; Kirby Mem. at 11–13. "Under this doctrine, lower federal courts lack subject matter jurisdiction over claims that effectively challenge state court judgments." Chris H. v. New York, 764 F. App'x 53, 56 (2d Cir. 2019) (citing D.C. Court of Appeals v. Feldman, 460 U.S. 462, 486–87 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415–17 (1923)). "The Rooker-Feldman doctrine pertains not to the validity of the suit but to the federal court's subject matter jurisdiction to hear it." Vossbrinck v. Accredited HomeLenders, Inc., 773 F.3d 423, 427 (2d Cir. 2014) (per curiam). Federal courts are "bar[red] . . . from exercising jurisdiction over claims 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" Sykes v. Mel S. Harris & Assocs. LLC, 780 F.3d 70, 94 (2d Cir. 2015) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). Hence, the Rooker-Feldman doctrine has four requirements: (1) the plaintiff lost in state court; (2) the loss occurred before the district court proceedings commenced; (3) the plaintiff complains of injuries caused by the state court judgment; and (4) the plaintiff invites district court review and rejection of that judgment. Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 84 (2d Cir.

2005).

Plaintiff first argues that she has not "lost" in state court because the state interpleader action at issue in this case does not have a "final judgments of a state court in judicial proceedings." Pl.'s Reply at 2 (citing <u>Hoblock</u>, 422 F.3d at 84). Yet the interpleader action has a final judgment given Plaintiff has withdrawn her appeals of those actions in state court. <u>See</u> <u>Harvey v. Chemung Cty.</u>, No. 11-CV-6563, 2012 WL 729714, at *6 (W.D.N.Y. Mar. 6, 2012) (dismissing a plaintiff's federal action under the <u>Rooker-Feldman</u> doctrine after the plaintiff had withdrawn her appeal in state court). Additionally, Plaintiff commenced the instant action on October 2, 2018, Compl., i.e., after Plaintiff withdrew her appeals of the interpleader action on March 13, 2018, R. Sprole, Martin, Jagel Mot. Dismiss, Ex. C. at 2. Thus, the second requirement of the <u>Rooker-Feldman</u> doctrine is satisfied as well. <u>See</u> <u>Hoblock</u>, 422 F.3d 77 at 84.

Regarding the third factor, "a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." <u>Id.</u> at 88. Since Plaintiff's injuries arise from the distribution of funds by R. Sprole, Martin, and Jagel to Alderman, Kirby, and Gingold pursuant to Justice O'Shea's orders in the interpleader action, "the instant suit is in essence alleging injury arising from a state court judgment, notwithstanding the intermediate actions of the defendants that may have been necessary to effectuate that judgment." <u>See</u> <u>Galtieri v. Kelly</u>, 441 F. Supp. 2d 447, 455 (E.D.N.Y. 2006). Consequently, Defendants have met the third requirement of the <u>Rooker-Feldman</u> doctrine. <u>See</u> <u>Hoblock</u>, 422 F.3d 77 at 84.

Plaintiff argues the fourth factor is not satisfied here since she is asserting claims that are "independent" of those litigated in the state action. Pl.'s Resp. to R. Sprole, Martin, and Jagel at 2 (internal quotation marks omitted). Plaintiff fails to acknowledge, however, that the Rooker-Feldman doctrine "also prohibits federal court review of claims that are inextricably intertwined with state court determinations." Chris H., 764 F. App'x at 56 (quoting Kropelnicki v. Siegel, 290 F.3d 118, 128 (2d Cir. 2002)). "A claim is inextricably intertwined under Rooker-Feldman when at a minimum, a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either the plaintiff or defendant in that proceeding), and the claim would be barred under the principles of preclusion." Kropelnicki, 290 F.3d at 128 (internal alterations and quotation marks omitted). Plaintiff admits that she had such an opportunity to litigate her fraud, breach of fiduciary duty, and "grand larceny" or "theft" claims. See Compl. at 27 ("[T]he Appellate Division . . . stated that my Fraud, Breach of Fiduciary Duty, and theft claims are all without merit."); supra Part IV.A.4 n.6. That Plaintiff had an opportunity to litigate her claims in state court is further underscored by the fact that she did in fact litigate some of those claims in the interpleader action. Id., Ex. 1 at 113–15; see also Chris H., 764 F. App'x at 56 ("[Plaintiff's] claim that state court judgments were obtained by fraud is inextricably intertwined with the merits of those judgments because he had the opportunity to raise these claims in state court, and a ruling in his favor from a federal court 'would effectively declare the state court judgment fraudulently procured and thus void.'") (quoting Kropelnicki, 290 F.3d at 129). And while Plaintiff raises her Fourteenth Amendment claims for the first time in the instant action, she had the opportunity to raise those claims when Justice O'Shea adjudicated the interpleader action or on appeal. See Cogswell v. Rodriguez, 304 F. Supp. 2d 350, 356 (E.D.N.Y. 2004) (holding a

plaintiff's due-process claim was barred under the Rooker-Feldman doctrine because the claim "could have been raised in state court, either in the Family Court or appeal").

Although Plaintiff "spruces up" her Complaint with "general allegations of fraud," breach of fiduciary duty, and grand larceny, "the damages Plaintiff seeks are aimed at compensating her for the potential loss of" alimony payments withheld from her pursuant to the state interpleader action. See Charles v. Levitt, 716 F. App'x 18, 22 (2d Cir. 2017). "This interpretation of the suit's focus is further buttressed by" this Court's "observation that the damages demanded in the" Complaint "are tied to the alleged value" of the withheld payments. See id. Plaintiff demands $80,403.69 from R. Sprole, Martin, Jagel, Alderman, Kirby, Gingold which equals the amount Justice O'Shea ordered withheld from Plaintiff's alimony payments. Compl. at 46. Thus, "the injury of which [Plaintiff] complains . . ., and which [s]he seeks to have remedied, is the state [court] judgment." Vossbrinck, 773 F.3d at 427.

That Plaintiff is attempting to improperly relitigate the interpleader action in state court is additionally highlighted by Justice O'Shea's order that Plaintiff not file or continue any actions, proceedings, or motions relating to her divorce in state court, absent advanced permission or representation by an attorney. Compl., Ex. 1 at 118. Application of Rooker-Feldman is appropriate when a plaintiff attempts to circumvent a state court's injunction preventing the plaintiff from pursuing further litigation without leave of the court. See Lipko v. Christie, 94 F. App'x 12, 14 (2d Cir. 2004), cert. denied, 543 U.S. 871 (2004) (upholding lower court's dismissal of a plaintiff's complaint under the Rooker-Feldman doctrine when Plaintiff had previously been sanctioned in state court).

In sum, since all four requirements of the Rooker-Feldman doctrine are satisfied then the Court lacks jurisdiction over Plaintiff's claims.

2.     *Domestic Relations Exception*

Defendants also argue that Plaintiff's claims must be dismissed pursuant to the domestic relations exception to the Court's subject matter jurisdiction, which "divests the federal courts of power to issue divorce, alimony, and child custody decrees." Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992). R. Sprole, Martin, Jagel Mem. at 14–16; N.Y. State Mem. at 4; Alderman Mem. at 4; Kirby Mem. at 9–11. At the core of the domestic relations exception lies the acknowledgment that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." Puletti v. Patel, No. 05-CV-2293, 2006 WL 2010809, at *4 (E.D.N.Y. July 14, 2006) (quoting In re Burrus, 136 U.S. 586, 593–94 (1890)). It is well settled that federal courts generally do not have jurisdiction over domestic matters based upon a "policy consideration that the states have traditionally adjudicated marital and child custody disputes and therefore have developed competence and expertise in adjudicating such matters, which federal courts lack." Thomas v. New York City, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993). Claims brought in federal court that do not seek to directly reverse state judgments, but that attempt to "rewrit[e] a domestic dispute as a tort claim for monetary damages," may still be barred under the exception. Schottel v. Kutyba, No. 6-1577-CV, 2009 WL 230106, at *1 (2d Cir. Feb. 2, 2009); see also Sutter v. Pitts, 639 F.2d 842, 844 (1st Cir. 1981) (rejecting plaintiff's attempt to clothe her demand for custody of her child "in the garb of a civil rights action").

Thus, Plaintiff's argument that she "did not commence a divorce action in this Court" and has instead "commenced a Civil Rights action" that "only seek[s] monetary relief from the wrongful interpleader action," Pl.'s Resp. R. Sprole, Martin, Jagel, is "of no moment," see Pappas v. Zimmerman, No. 13-CV-4883, 2014 WL 3890149, at *4 (E.D.N.Y. Aug. 6, 2014). Rather, Plaintiff's claims "involve[] issues 'directly related' to the state court proceeding[] and invite the federal court to 're-examine and reinterpret' the evidence" within the interpleader action. See id. (quoting McArthur v. Bell, 788 F. Supp. 706, 709 (E.D.N.Y.1992)). As discussed above, Plaintiff's claims seek to "directly" challenge the outcomes of the state interpleader action. See supra Part IV.A.1; Pappas, 2014 WL 3890149, at *4 (internal quotation marks omitted). And in order to adjudicate Plaintiff's claims, the Court would need to "re-examine and reinterpret" the decisions and orders of the state court along with the evidence upon which those decisions and orders are based. See Pappas, 2014 WL 3890149, at *4 (internal quotation marks omitted). Accordingly, the domestic relations exception to federal subject matter jurisdiction applies here because "the Court cannot begin to assess" Plaintiff's claims "without becoming embroiled in the factual disputes of the state court action." See Eisenstein v. Haber, No. 92 CIV. 8061, 1993 WL 37146, at *3 (S.D.N.Y. Feb. 8, 1993). Thus, the Court does not possess jurisdiction to hear Plaintiff's claims.

### 3. *Federal Question Jurisdiction*

Plaintiff has invoked the Court's federal question jurisdiction over this case. See Compl. at 1 (citing 28 U.S.C. § 1331); Pl.'s Reply at 15 ("I did not assert or request a diversity jurisdiction action . . . ."). She has pled one potential federal claim, namely that Defendants violated her Fourteenth Amendment rights under § 1983. Section 1983 gives individuals a right

to sue "any person" who (1) deprives him or her of "rights, privileges, or immunities secured by the Constitution and laws" of the United States, (2) while acting "under color of" state law. Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010). "In § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment." Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982). "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that [her] constitutional rights have been violated must first establish that the challenged conduct constitutes state action." Fabrikant v. French, 691 F.3d 193, 206 (2d Cir. 2012). To show state action Plaintiff "must allege that [she] was injured by either a state actor or a private party acting under color of state law." Ciambriello v. Cty. of Nassau, 292 F.3d 307, 323 (2d Cir. 2002). Plaintiff has not alleged any facts that show R. Sprole, Martin, Jagel, Alderman, and Kirby are state actors, and all five Defendants attest that they are not state actors. See R. Sprole Decl. ¶ 3, Martin Decl. ¶ 3, Jagel Decl. ¶ 3, Alderman Decl. ¶ 3, Kirby Decl. ¶ 2. Plaintiff's § 1983 claims against R. Sprole, Martin, Jagel, Alderman, and Kirby must therefore be dismissed for this reason as well.[5] See Thompson v. Booth, No. 16-CV-3477, 2018 WL 4760663, at *11 (S.D.N.Y. Sept. 28, 2018) (dismissing a plaintiff's § 1983 claim because he had failed to allege the defendant was a state actor).

4.      *Supplemental Jurisdiction*

The district courts of the United States are "courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of

---

[5]  State of New York does not assert, nor could it, that it is not a state actor for the purposes of Plaintiff's § 1983 claim.

America, 511 U.S. 375, 377 (1994). Under 28 U.S.C. § 1367(a), a district court may have "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." And under § 1367(c), a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." § 1367(c)(3).

While Plaintiff asserts claims under federal law and New York State law, Plaintiff has not asserted diversity jurisdiction and the Court does not have jurisdiction over her federal-law, i.e., § 1983, claims as to all Defendants except the State of New York. Hence, there is no claim as to all Defendants except the State of New York over which the Court may exercise original jurisdiction. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Chris H., 764 F. App'x at 56 (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). Consequently, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against R. Sprole, Martin, Jagel, Alderman, and Kirby.[6]

---

[6] Even if the Court were to exercise jurisdictions over Plaintiff's state law claims, Plaintiff has not asserted a cognizable claim for "grand larceny." Under New York State law, grand larceny is a criminal offense. See N.Y. Penal Law §§ 155.30–155.42. "[C]riminal offenses such as larceny, which are specifically defined in the Penal Law, may not be pleaded as separate causes of action in a civil action." Montalvo v. J.P. Morgan Chase & Co., 906 N.Y.S.2d 781 (N.Y. Sup. 2009); see also McFadden v. Ortiz, No. 12-CV-1244, 2013 WL 1789593, at *3 (N.D.N.Y. Apr. 26, 2013) ("There is no private right of action to enforce either state or federal criminal statutes."). Plaintiff's attempts to restyle her grand larceny claim as "theft," Pl.'s Reply at 15 ("I need to finish replacing the words 'Grand Larceny' with the word 'theft.'"), are

\*   \*   \*

Although Gingold has answered the complaint and has not filed a motion to dismiss, the Court "has an obligation to consider its subject matter jurisdiction sua sponte." <u>Sekiguchi v. Long</u>, No. 13-CV-1223, 2013 WL 5357147, at \*1 (D. Conn. Sept. 25, 2013) (citing <u>Joseph v. Leavitt</u>, 465 F.3d 87, 89 (2d. Cir. 2006), <u>cert. denied</u>, 549 U.S. 1282 (2007)). Given Plaintiff has asserted claims against Gingold identical to those asserted against the other Defendants, the Court also lacks jurisdiction over Plaintiff's claims against Gingold.

"Since the Court lacks subject matter jurisdiction over this case, the Court does not reach" Defendant's "alternative argument[s], that the complaint should be dismissed for failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6)." <u>Galtieri v. Kelly</u>, 441 F. Supp. 2d 447, 458 (E.D.N.Y. 2006) (citing <u>Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n</u>, 896 F.2d 674, 678 (2d Cir. 1990)). Likewise, the Court need to reach R. Sprole, Martin, Jagel, Alderman, and Kirby's motions to dismiss pursuant to Rule 12(b)(5). <u>See</u> <u>Suger v. Dep't of Soc. Servs.</u>, No. 09-CV-1766, 2010 WL 4683915, at \*4 (D. Conn. Nov. 8, 2010) (declining to adjudicate the defendant's motion to dismiss pursuant to Rule 12(b)(5) because the court dismissed the plaintiff's claims under Rule 12(b)(1)). Nor must it reach State of New York's motion to dismiss pursuant to Rule 12(b)(4). <u>See</u> <u>Cooper v. 6 W. 20th St. Tenants Corp.</u>, No. 93 CIV. 5587, 1995 WL 75477, at \*3 (S.D.N.Y. Feb. 22, 1995) ("Having determined that this action must be dismissed for lack of subject matter jurisdiction, the Court does not reach Defendants' motion pursuant to Fed. R. Civ. P[.] 12(b)(4)." And it need not address Defendants'

---

unavailing. "'Theft' is not a claim under New York Law." <u>Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.</u>, 665 F. Supp. 2d 239, 257 (S.D.N.Y. 2009). Consequently, Plaintiff has not brought a cognizable claim for theft as well.

arguments that several of Plaintiff's allegations are time barred. R. Sprole, Martin, Jagel Mem. at 22–23; Alderman Mem. at 4, see also Reid v. Granco-Clark, No. 93-CV-135, 1993 WL 350180, at *2 (N.D.N.Y. Sept. 7, 1993) (declining to address the defendants' arguments that the plaintiff's complaint was time barred because the court did not have subject matter jurisdiction over the plaintiff's claims).

### B.    Counterclaim-Defendant's Motion to Dismiss

Plaintiff as Counterclaim-Defendant has filed a motion to dismiss Gingold's counterclaim for sanctions and attorney's fees. Countercl.-Def. Mot. Dismiss. Though the Court may "lack[] jurisdiction to decide the merits of the underlying action, it retain[s] the power to determine collateral issues, such as the appropriateness of sanctions." Perpetual Sec., Inc. v. Tang, 290 F.3d 132, 141 (2d Cir. 2002).

As an initial matter, Counterclaim-Defendant argues she was not properly served with Gingold's counterclaim. Countercl.-Def. Mem. at 6. She suggests that Gingold failed to personally serve her with the counterclaim as his process server "folded Harlan Gingold's Answer (with a Counterclaim consisting of only a paragraph) and shoved it in the handle of my front door without an envelope." Id. Counterclaim-Defendant also attests that Gingold never mailed her a hard copy of the counterclaim. Id. Gingold never responded to Plaintiff's argument, though his process server signed an affidavit attesting to personal service of the counterclaim upon Counterclaim-Defendant. See Dkt. No. 23 ("Gingold Answer and Counterclaim Certificate of Service"). It is unclear whether Gingold complied with the requirements of Rule 5, which establishes the rules for service of pleadings besides the complaint. See Fed. R. Civ. P. 5(b). The process server's affidavit does not shed light on whether Counterclaim-Defendant was properly

served; rather, it simply states that she was "personally served" with the counterclaim. Gingold Answer Countercl. Certificate Serv. But even assuming service was proper, Gingold's counterclaim is dismissed for the reasons that follow.

While Gingold's counterclaim does not specify what type of sanction relief he seeks against Counterclaim-Defendant, his Response to Counterclaim-Defendant's Motion to Dismiss suggests he is requesting sanctions pursuant to Rule 11. <u>See</u> Countercl.-Pl. Resp. at 7 (citing to "FRCP Rule 11" in opposing Counterclaim-Defendant's Motion to Dismiss). A party violates Rule 11 if the party submits a pleading "for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." <u>Kropelnicki</u>, 290 F.3d at 131 (2d Cir. 2002) (internal quotation marks omitted). However, a court may not impose sanctions under Rule 11 unless the party requesting sanctions has followed the procedures for pursuing sanctions outlined in Rule 11(c)(2). "Under Rule 11(c)(2), a motion for sanctions is initially to be served only on the [pro se party], and not filed with the Court. The motion is to be filed with the Court only if, 21 days after such service, the challenged submission has not been 'withdrawn or appropriately corrected.' Sanctions may not be awarded under Rule 11(c)(2) where proper notice and opportunity to withdraw or correct the filing were not provided to the party to be sanctioned." <u>Charles v. Levitt</u>, 15 CIV. 9334, 2016 WL 3982514, at *6 (S.D.N.Y. July 21, 2016), <u>aff'd and remanded on other grounds</u>, 716 F. App'x 18 (2d Cir. 2017) (quoting Fed. R. Civ. P. 11(c)(2)) (citing <u>Lawrence v.</u>

Richman Grp. of CT LLC, 620 F.3d 153, 158 (2d Cir. 2010)).[7] Gingold has not indicated that he followed these procedures in requesting sanctions. Consequently, the Court denies his request.

Turning to Gingold's request for attorney's fees, he has predicated his request on 42 U.S.C. § 1988, which allows a court, in its discretion, to award a "prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" for enforcing certain civil rights statutes, such as § 1983. § 1988. "A court may award attorney's fees to prevailing defendants pursuant to § 1988 if the complaint against them was 'frivolous, unreasonable, or groundless, or [if] the plaintiff continued to litigate after it clearly became so.'" Pers. v. White, No. 09-CV-3920, 2010 WL 2723210, at *6 (E.D.N.Y. July 2, 2010) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978)). The Pers court also noted that

> courts must apply limitations . . . with special force in actions
> initiated by uncounseled [plaintiffs], and attorney's fees should rarely
> be awarded against such plaintiffs . . . The mere fact that a pro se
> plaintiff's complaint, even when liberally construed, cannot survive
> a motion to dismiss does not, without more, entitle the defendant to
> attorney's fees.

Id. (quoting Hughes v. Rowe, 449 U.S. 5, 15 (1980)) (internal quotation marks omitted). Given Counterclaim-Defendant's pro se status her claims, like the Plaintiff in Pers, "do not reach the level of groundlessness required to award § 1988 attorney['s] fees to" Gingold. Id. Counterclaim-Defendant "should not be punished for [her] failure to recognize subtle factual or legal

---

[7] "It is well established that Rule 11 applies to pro se litigants . . . However, pro se parties are afforded greater leniency in considering whether or not to impose Rule 11 sanctions." Smith v. Educ. People, Inc., 233 F.R.D. 137, 142 n.9 (S.D.N.Y. 2005), aff'd sub nom. Smith v. The Educ. People, Inc., No. 05-2971-CV, 2008 WL 749564 (2d Cir. Mar. 20, 2008) (internal citations omitted).

deficiencies in [her] claims, such as the applicability of the Rooker-Feldman doctrine." Id. (quoting Hughes v. Rowe, 449 U.S. 5, 15 (1980)) (internal quotation marks omitted).

## IV.    CONCLUSION

Plaintiff suggests that she will pursue all legal avenues to address her claims. See, e.g., Pl.'s Resp. Kirby, Alderman, and State of New York ("I will fight until my death to make sure that millions of lawyers across the United States do not use interpleader actions to unlawfully take away our life, liberty and property without due process of law.") "Although Fed. R. Civ. P. 15(a) provides that leave to amend should be given freely when justice so requires, where, as here, there is no merit in the proposed amendments, leave to amend should be denied." Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. 1990). In this case, the Court finds that there is no such merit in allowing Plaintiff to amend her Complaint because no amendment would allow this Court to exercise subject matter jurisdiction over Plaintiff's claims. The Court therefore dismisses Plaintiff's claims without prejudice and without an opportunity to amend. See Hernandez v. Conriv Realty Assocs., 182 F.3d 121, 123 (2d Cir. 1999) ("Where a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice); see also Uzoefune v. American Auto Shield, LLC, No.18-CV-3441, 2018 WL 5624149, at *3 (E.D.N.Y. Oct. 30, 2018) (dismissing without prejudice for lack of subject matter jurisdiction, but denying leave to amend because an amendment cannot cure the jurisdictional defect).

Accordingly, it is hereby:

**ORDERED**, that R. Sprole, Martin, and Jagel's Motion to Dismiss (Dkt. No. 16), State of New York's Motion to Dismiss (Dkt. No. 27), Kirby's Motion to Dismiss (Dkt. No. 29), and Alderman's Motion to Dismiss (Dkt. No. 31) are **GRANTED**. Plaintiff's claims against R.

Sprole, Martin, Jagel, State of New York, Kirby, and Alderman are **DISMISSED without prejudice, but without leave to amend**; and it is further

ORDERED, that Plaintiff's claims against Gingold are **DISMISSED without prejudice, but without leave to amend**; and it is further

ORDERED, that Counterclaim-Defendant's Motion to Dismiss (Dkt No. 28) is **GRANTED**. Gingold's counterclaim (Dkt. No. 19) is **DISMISSED without prejudice**; and it is further

ORDERED, that the Clerk of the Court substitute the State of New York for Underwood as a defendant and amend the case caption accordingly; and it is further

ORDERED, that the Clerk of the Court is directed to close this action; and it is further

ORDERED, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   September 27, 2019
         Albany, New York

Lawrence E. Kahn
U.S. District Judge